OPINION
Defendant-appellant, Cogley Construction, Inc., appeals from a judgment of the Franklin County Municipal Court granting judgment in favor of plaintiff-appellee, H-3 Construction, Inc., in the amount of $2,681.24 plus costs and interest.
Plaintiff and defendant orally agreed that defendant was to lay underground cable in and around the city of Columbus. Under the agreement, plaintiff was to pay defendant per foot of cable laid, but defendant would be liable for any damage, called "hits," defendant caused to pre-existing underground cables. After defendant's work was completed, plaintiff began receiving bills from utility companies for repair work that the companies had performed, allegedly as a result of defendant's hits on their underground cables. Plaintiff paid the repair costs and sent the bills to defendant for payment. Defendant denied responsibility for the payments and plaintiff subsequently filed suit to recover the costs of the repairs it paid.
On August 13, 1998, the matter was tried to the court without a jury. At that hearing, plaintiff's president, James Hyland, testified to the various bills he had paid, allegedly due to defendant's hits of underground cables. Hyland attempted to prove defendant's fault through work maps showing that, according to the date on the various bills, defendant's crew was on the street the day the hit was either reported or repaired. Of the eight bills plaintiff presented, six were from Time Warner Communications. Attached to each of them was a "Damage Report" prepared by Warner Cable.
Richard Cogley, an officer of defendant, testified denying that his crews had caused all of the hits in question. He stated defendant had already paid one of the repair bills, a $250 bill for a gas pipe hit, and admitted his crew had caused one of the other hits. He also testified that when defendant's work crew was responsible for damages, defendant received bills from the utility companies and paid them.
After the hearing, the trial court issued findings of fact and conclusions of law, and entered judgment in favor of plaintiff in the amount of $2,681.24. Defendant timely appeals, assigning the following errors:
 I. THE TRIAL COURT ERRED IN THE ADMISSION OF HEARSAY TESTIMONY.
 II. THE TRIAL COURT ERRED IN ADMITTING HEARSAY STATEMENTS CONTAINED IN INVOICES AND REPORTS OF NON-PARTIES AS BUSINESS RECORDS UNDER EVIDENCE RULE 803(b) [sic].
 III. THE DECISION OF THE TRIAL COURT IS CONTRARY TO LAW AND AGAINST THE MANIFESTED [sic] WEIGHT OF EVIDENCE.
Defendant's first two assignments of error contend that the trial court erred in admitting various testimony and evidence that defendant argues is hearsay. The alleged hearsay includes (1) statements of plaintiff's employees conveyed through plaintiff's president concerning defendant's negligence, and (2) bills sent to plaintiff for damages defendant allegedly caused.
The admission of evidence is generally within the sound discretion of the trial court, and a reviewing court may reverse only upon the showing of an abuse of that discretion. Renfro v.Black (1990), 52 Ohio St.3d 27, 32; see, also, WUPW TV-36 v.Direct Results Marketing, Inc. (1990), 70 Ohio App.3d 710, 714
(admissibility of business records pursuant to Evid.R. 803(6) rests within the sound discretion of trial court and determinations thereunder will not be reversed absent a clear abuse of discretion); National City Bank v. Fleming (1981),2 Ohio App.3d 50, 56. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. WUPW, supra, citingBeacon Journal Pub. Co. v. Stow (1986), 25 Ohio St.3d 347.
In its first assignment of error, defendant alleges that hearsay testimony was improperly admitted over defendant's objection. Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Defendant specifically notes Hyland's testimony that plaintiff's supervisors told Hyland the hits were caused by a "deviation from proper procedure." (Tr. 19.) Hyland's testimony was hearsay, as it was a statement made by another, plaintiff's supervisors, and was offered to prove the truth of the matter asserted, defendant's fault. Fault is central to plaintiff's case, as Hyland testified that if the hit was not defendant's fault, defendant would not pay for any resulting damage. Accordingly, the testimony could only come into evidence if it properly fit into an exception to the hearsay rule.
Over defendant's objections, the trial court admitted such testimony because it "was related to him in the ordinary course of business." (Tr. 19.) Plaintiff however, cannot point to such an exception of Evid.R. 802's hearsay prohibition. The business records exception that the trial court apparently relied upon in admitting the testimony applies to any "memorandum, report, record, or data compilation * * *." Evid.R. 803(6). Hyland's testimony does not fall within the parameters of Evid.R. 803(6). Instead, because Hyland's testimony was words conveyed to Hyland by another, his testimony in that regard should not have been admitted into evidence. Moreover, admission of Hyland's testimony was prejudicial to defendant because it tended to show that defendant caused the hits in question. The trial court abused its discretion when it admitted Hyland's testimony.
Defendant also contends the trial court improperly admitted hearsay evidence in the bills Hyland discussed in his testimony. The bills, prepared by the utility companies for the repairs they performed, were admitted as business records pursuant to Evid.R. 803(6) over defendant's objections.
In an effort to circumvent the hearsay rule, plaintiff contends the bills were not offered to prove the truth of the matter asserted, but were offered to show what triggered plaintiff's investigations into the damages. The bills, however, were used to show that the damage occurred and the total amount of damages. They also were used to prove defendant's negligence, as the damage reports attached to each Time Warner bill noted that the underground cables were properly located, thus laying blame for the hits on defendant. Because the bills were admitted for the truth of the matter asserted in them and therefore were hearsay, they must be excluded from evidence unless excepted by the hearsay rule.
Evid.R. 803 provides as follows:
 The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
* * *
 (6) A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness * * * unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. * * *
The trial court admitted the bills into evidence under the above exception to the hearsay rule. However, admission of business records is an abuse of discretion by the trial court where an inadequate foundation is laid to establish the admissibility of the records under Evid.R. 803(6). Hinte v. Echo, Inc. (Dec. 10, 1998), Franklin App. No. 98AP-105, unreported (1998 Opinions 5598), citing State v. Comstock (Aug. 15, 1997), Ashtabula App. No. 96-A-0058, unreported.
In laying a foundation, "the testifying witness must possess a working knowledge of the specific record-keeping system that produced the document." Hinte, supra, quoting State v. Davis
(1991), 62 Ohio St.3d 326, 342 (noting that "[w]hile the witness need not have personal knowledge of the creation of the particular record in question, and need not have been in the employ of the company at the time the record was made, he must be able to vouch from personal knowledge of the record-keeping system that such records were kept in the regular course of business"). Moreover, the witness must either be the custodian of the records or some "other qualified person." Evid.R. 803(6). While the rule does not require the witness whose testimony establishes the foundation for a business record to have personal knowledge of the exact circumstances of preparation and production of the document, the witness must "demonstrate that he or she is sufficiently familiar with the operation of the business and with the circumstances of the preparation, maintenance, and retrieval of the record in order to reasonably testify on the basis of this knowledge that the record is what it purports to be, and was made in the ordinary course of business."Hinte, supra, qouting Keeva J. Kekst Architects, Inc. v. GeorgeDev. Group, (May 15, 1997), Cuyahoga App. No. 70835, unreported, citing WUPW TV-36, supra.
Here, plaintiff's president presented the only testimony that attempted to lay the proper foundation for the bills and attachments. Hyland's testimony, however, failed to lay a proper foundation for the admission of the bills and damage reports into evidence. He failed to testify to the preparation of the records, and specifically whether they were prepared in the ordinary course of business. In fact, as noted in Hyland's own testimony, neither he nor any of plaintiff's employees had anything to do with preparing the bills. He also had no knowledge of the process that produced the records. While an employee of the various utility companies may have been able to testify to the records and the internal procedures used in their preparation, plaintiff's only witness possessed no knowledge of the internal billing procedures used by the utility companies. His testimony was limited to the simple fact that he obtained the bills. Information in records that an organization receives from outsiders is not part of its business records for purposes of Evid.R. 803(6). Babb v. Ford Motor Co. (1987), 41 Ohio App.3d 174,177; Reichhold Chemical, Inc. v. Haas (Nov. 3, 1989), Portage App. No. 1983, unreported; see, also, State v. Hirtzinger
(1997), 124 Ohio App.3d 40 (finding customer unable to lay proper foundation for admission of bills pursuant to Evid.R. 803(6)). Lacking a proper foundation for admission, the trial court abused its discretion in admitting the bills into evidence.
Defendant's first and second assignments of error are sustained.
Defendant's third assignment of error contends that the trial court's decision granting judgment in the amount of $2,681.24 was contrary to law and against the manifest weight of the evidence.
Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction Co.
(1978), 54 Ohio St.2d 279, syllabus. Here, disregarding the hearsay evidence the trial court improperly admitted, the record for the most part contains insufficient competent, credible evidence to show the damages plaintiff incurred, as plaintiff presented no evidence of damages other than the inadmissible bills it had received from the utility companies.
Defendant, however, through Cogley, admitted it was responsible for $286.50 in damages to cable wires. Competent, credible evidence thus supports $286.50 in damages. Accordingly, defendant's third assignment of error is sustained in part and overruled in part.
Having sustained defendant's first two assignments of error, and having sustained in part and overruled in part defendant's third assignment of error, we affirm in part and reverse in part the judgment of the trial court and remand this matter with instructions to enter judgment in favor of plaintiff in the amount of $286.50.